IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

J.B., a minor, who sues by and
through his Mother and next
friend, Stacy Brown

        **Plaintiff,**

v.                                                              CV 1:11-1182-RBP

**SHERIFF LARRY AMERSON
and DEPUTY WARD**

        **Defendant.**

## MEMORANDUM OPINION

This cause comes to be heard on the Motion for Summary Judgment filed by the defendants on May 25, 2012, and orally argued by the parties at a recorded hearing on July 26, 2012.[1]

While Shakespeare suggested in The Merchant of Venice that a good deed "shines" in a naughty world," others have said that "no good deed goes unpunished."[2] Sheriff Amerson's good deed was to volunteer to conduct a community service program (not one of his prescribed duties) attempting to steer juveniles away from disorderly conduct and more serious conflicts with law enforcement, and to aid public schools in this pursuit. The plaintiff was voluntarily enrolled by his mother in a program Amerson created called "Success Academy" or "Suspended Student Program." The program was distinguished, in writing, from so-called "scared straight"

---

[1] Remaining claims against defendant Ward were dismissed by the plaintiff.

[2] There is no clear cut answer to the question of who originated the latter quote. It has been associated with G. K. Chesterton, Oscar Wilde, Billy Wilder, Clare Booth Luce, etc. Some of these persons obviously just further popularized the expression.


programs.

After some initial legal jousting, the remaining issue in this case has become whether the plaintiff suffered from more than *de minimis* force by defendant Amerson in violation of the Fourth Amendment. In other words, did Amerson apply excessive force to the plaintiff? What happened with regard to the only remaining issue in this case is substantially established by a video of the interaction between Amerson and the plaintiff,[3] the depositions of plaintiff and his mother, and documents maintained by the Coosa Valley Youth Services and Juvenile Detention of the State of Alabama.

## Standard of Review

Under Rule 56(c)(2) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. Id. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." Id. at 324 (citation and internal quotation marks omitted).

---

[3] It is clear that the only force which should be considered relates to the one brief application of force after the two sat side by side on a bench. Amerson claims that he heard plaintiff "hocking" in preparation to spitting on him. The court cannot so determine as a matter of law.

A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); see also *Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). "On summary judgment, "[i]f there is conflict between the plaintiff's and the defendant's allegations or in the evidence, the plaintiff's evidence is to be believed and all reasonable inferences must be drawn in his favor." *Shotz v. City of Plantation, Fla.*, 344 F. 3d 1161, 1164 (11th Cir. 2003) (quoting *Molina v. Merritt & Furman Ins. Agency*, 207 F. 3d 1351, 1356 (11th Cir. 2000)). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing Anderson, 477 U.S. at 252).

### Qualified Immunity

Amerson argues that there is no evidence of a Constitutional violation because, among other reasons, the alleged force was *de minimis* and not excessive. He argues that, in any event, he is entitled to a dismissal of claim(s) based on qualified immunity.

"Qualified immunity operates 'to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citing *Saucier v.*

*Katz*, 533 U.S. 194, 206 (2001)). Therefore, "[g]overnment officials performing discretionary functions are entitled to qualified immunity 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Lancaster v. Monroe County*, 116 F.3d 1419, 1424 (11th Cir. 1997) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Indeed, officers are entitled to qualified immunity unless the "supposedly wrongful act was already established to such a high degree that every objectively reasonable official standing in the defendant's place would be on notice that what the defendant official was doing would be clearly unlawful given the circumstances." *Bozeman v. Orum*, 422 F.3d 1265, 1273 (11th Cir. 2005) (internal quotation marks and citations omitted). In other words, qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments." *Messerschmidt v. Millender*, __U.S.__, 132 S.Ct. 1235, 1344-45 (2012). Therefore, "'[b]ecause qualified immunity shields government actors in all but exceptional cases, courts should think long and hard before stripping defendants of immunity.'" *GJR Investments, Inc. v. County of Escambia*, 132 F.3d 1359, 1366 (11th Cir. 1998) (quoting *Lassiter v. Alabama A & M Univ. Bd. of Trs.*, 28 F.3d 1146, 1149 (11th Cir. 1994)).

To receive qualified immunity from suit, "the government official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Mathews v. Crosby*, 480 F.3d 1265, 1269 (11th Cir. 2007). The burden then shifts to the plaintiff to demonstrate that qualified immunity is not appropriate by showing that (1) "the government official's conduct violated a Constitutional right" and (2) the Constitutional right was "clearly established" by preexisting federal law at the time of the action. *Id.* (citing *Saucier*, 553 U.S. at 201). A court need no longer follow the rigid two-prong approach introduced in *Saucier*. The

4

Supreme Court has provided that "judges of the district courts . . . should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"'Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken.'" *Messerschmidt*, 132 S.Ct. at 1244-45 (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). In the Eleventh Circuit, "the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." *Jenkins v. Talladega Bd. of Educ.*, 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (internal citations omitted). To be "clearly established," pre-existing law must provide "fair warning" to the defendant government official that his conduct was illegal. *Messerschmidt*, 132 S.Ct. at 1244-45. The Eleventh Circuit has held that "[w]hen an excessive force plaintiff shows that the official's conduct lies so obviously at the very core of what the Constitution prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law, the official is not entitled to the defense of qualified immunity." *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 926 (11th Cir. 2000).

<center>Excessive Force</center>

The Supreme Court has provided that a plaintiff's excessive force claim is "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Graham v. Conner*, 490 U.S.

<center>5</center>

386, 388 (1989).[4] The objective reasonableness standard requires the court to "carefully balance 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against 'the countervailing governmental interests at stake.'" *Oliver v. Fiorino*, 586 F.3d 898, 905 (11th Cir. 2009) (quoting *Graham*, 490 U.S. at 396). *See also Terrell v. Smith*, 668 F.3d 1233, 1250 (11th Cir. 2012). The Eleventh Circuit has stated that "[i]n determining the reasonableness of the force applied, we look at the fact pattern from the perspective of a reasonable officer on the scene with knowledge of the attendant circumstances and facts, and balance the risk of bodily harm to the suspect against the gravity of the threat the officer sought to eliminate.'" *Id.* at 1251 (quoting *McCullough v. Antonlini*, 559 F.3d 1201, 1206 (11th Cir. 2009)). Courts must take into account the Supreme Court's statement that "'[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments about the amount of force that is necessary in a particular situation.'" *Penley v. Eslinger*, 605 F.3d 843, 950 (11th Cir. 2010) (quoting *Graham*, 490 U.S. at 397)). The "reasonableness of the officer's belief as to the appropriate level of force should be judged from [the] on-scene perspective." *Saucier v. Katz*, 533 U.S. 194, 205 (2001).

However, "the application of *de minimis* force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Durruthy v. Pastor*, 351 F.3d 1080, 1094 (11th Cir. 2003) (citing *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000)). The Eleventh Circuit has considered *de minimis* force to include "where an officer grabbed the plaintiff from behind the shoulder and wrist, threw him against a van three or four feet away, kneed him in the back and pushed his head into the side of the van, searched his groin area in an uncomfortable manner, and

---

[4] See, however, *Rodriquez v. Phillips*, 66 F.3d 470 (2nd Cir. 1995).

handcuffed him." *Id.* (quoting *Nolin*, 207 F.3d at 1255). *See also Jones v. City of Dothan*, 121 F.3d 1456, 1460 (11th Cir. 1997) (finding the level of force used to be only minor where officers pushed the plaintiff against a wall, kicked his legs apart, put his arms above his head, and removed his wallet from his pants pocket). The Supreme Court has recognized that "[n]ot every push or shove, even if it may seem unnecessary in [the] peace of a judge's chambers, violates the Fourth Amendment." *Saucier*, 533 U.S. at 209.

At least one factor that has been considered by the court in determining the reasonableness of the level of force used against a plaintiff is whether the plaintiff was restrained at the time the force was used. *See Durruthy*, 351 F.3d at 1094 ("Notably, Durruthy had not been restrained at the time the force was applied, distinguishing the instant case from two cases on which the district court relied.").[5] For example, in *Lee v. Ferraro*, 284 F.3d 1188, 1191, 1198-99 (11th Cir. 2002), the court denied qualified immunity, finding the level of force used against the plaintiff to be excessive where the plaintiff had already been handcuffed when officers *slammed* her into a car. Similarly, in *Priester v. City of Riviera Beach*, 208 F.3d 919, 927 (11th Cir. 2000), the court found force to be excessive where an officer had *released an attack dog on the plaintiff* after the plaintiff had already been forced to lie on the ground and while the officer pointed his gun at the plaintiff's head.

In *Graham v. Conner*, 490 U.S. 386, 396 (1989), the Court stated:

> As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *See Scott v. Untied States*, 436 U.S. 128, 137-39, 98 S.Ct. 1717, 1723-24, 56 L.Ed.2d 168 (1978); *see also Terry v. Ohio, supra*, 392 U.S., at 21, 88 S.Ct., at 1879 (in analyzing

---

[5] Here, the plaintiff was cuffed and shackled. That fact, however, had little to do with the nature and degree of force applied here.

> the reasonableness of a particular search or seizure, "it is imperative that the facts be judged against an objective standard"). An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional. *See Scott v. United States, supra,* 436 U.S., at 138, 98 S.Ct., at 1723, citing *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).

*Id.* at 397.

The Eleventh Circuit recently reiterated the objectivity requirement of the reasonableness analysis in the excessive force context in *Garczynski v. Bradshaw,* 573 F.3d 1158, 1166 (11th Cir. 2009) ("'the 'reasonableness' inquiry in an excessive force case is an objective one. . .'") (quoting *Graham,* 490 U.S. at 397). The plaintiff cites an Eleventh Circuit case, *Hadley v. Gutierrez,* 526 F.3d 1324 (11th Cir. 2008), for the proposition that in determining the reasonableness of force used, a court can consider whether the officer applied the force in a "malicious" and "sadistic" manner or else in "good faith." *See Hadley,* 526 F.3d at 1324 ("Our cases identify several factors instructive in determining whether an officer's use of force was objectively reasonable, including. . . (4) whether the force was applied in good faith or maliciously and sadistically.") (quoting *Slicker v. Jackson,* 215 F.3d 1225, 1233 (11th Cir. 2000). However, inquiry into the officer's subjective intentions behind using force was expressly foreclosed in *Graham.* 490 U.S. at 397. The *Hadley* and *Slicker* opinions directly rely on a quote from the Eleventh Circuit's decision in *Leslie v. Ingram,* which came out three years *before* the Supreme Court's 1986 decision in *Graham.* The *Leslie* court stated that one of the factors a court could consider in "determining whether an officer's use of force was objectively reasonable" was "whether the force was applied in good faith or maliciously and sadistically." 786 F.2d 1533, 1536 (11th Cir. 1986). The *Graham* decision directly overruled the use of this factor. 490 U.S. at 397 ("An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make


an objectively unreasonable use of force constitutional."). *See also Graham*, 490 U.S. at 397 ("We do not agree with the Court of Appeals' suggestion, see 827 F.2d, at 948, that the "malicious and sadistic" inquiry is merely another way of describing conduct that is objectively unreasonable under the circumstances. . .the fact remains that the "malicious and sadistic factor puts in issue the subjective motivations of the individuals officers, which our prior cases make clear has no bearing on whether a particular seizure is 'unreasonable' under the Fourth Amendment.").

Other Eleventh Circuit cases have recognized *Graham*'s overruling of *Leslie*'s use of the subjective intent factor. In *Nolin v. Isbell*, 207 F.3d 1253, 1257 n. 3 (11th Cir. 2000), the court stated, "[t]he district court correctly noted that *Leslie* included the now-superceded four part test for excessive force claims." Furthermore, the Eleventh Circuit in *Lee v. Ferraro*, 284 F.3d 1188, 1198 n.7 (11th Cir. 2002) stated:

> Although this Circuit's test previously included a subjective prong examining whether the force was applied maliciously, *see, e.g., Leslie*, 786 F.2d at 1536, this factor has been eliminated from the analysis by *Graham* and other cases establishing that the excessive force inquiry should be completely *objective*, therefore excluding consideration of the officer's intentions. *See Nolin v. Isbell*, 207 F.3d 1253, 1257 n.3 (11th Cir. 2000) (referring to subjective element of excessive force test as "invalidated"); *see also Graham*, 490 U.S. at 397-99, 109 S.Ct. 1872-73 ("An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively reasonable use of force constitutional."). The other three elements of the *Leslie* test are still valid after *Graham*. *See, e.g., Jackson*, 206 F.3d at 1170 n. 18.

(emphasis in original). When examining the reasonableness of the force used by an officer against the plaintiff, the officer's motivations and intentions will not be taken into account. The only thing the court will consider is whether the officer's use of force was objectively reasonable under the circumstances. Therefore, the court will not consider any argument put forth by the plaintiff that the defendant allegedly used force against the plaintiff in a malicious or sadistic manner.

De Minimis Force

In the Fourth Amendment excessive force analysis, courts do not give *de minimis* injury separate consideration from *de minimis* force, but instead consider them in conjunction with one another. For example, in *Jones v. City of Dothan*, 121 F.3d 1456, 1460 (11th Cir. 1997), the Eleventh Circuit determined that qualified immunity protected the officers because while "the use of force against [the plaintiff] may have been unnecessary, the actual force and the injury inflicted were both minor in nature." The Eleventh Circuit has also considered *de minimis* injury as evidence that the level of force applied against the plaintiff was also merely *de minimis*, as opposed to excessive. *See Nolin v. Isbell*, 207 F.3d 1253, 1256 (11th Cir. 2000) (quoting *Gold v. City of Miami*, 121 F.3d 1442, 1446-47 (11th Cir. 1997) ("The minor nature of this injury reflects that minimal force was used to apply the handcuffs.")).

Analysis and

Conclusions of the Court

The undisputed evidence in this case establishes that the purported injury to the plaintiff was *de minimis*, if existent, and, thus, that any force was *de minimis* and not excessive. The court initially looks to the depositions of plaintiff and his mother. The plaintiff's deposition suggests that he had social-type problems before the incident and that his experiences at the jail may have actually caused some improvement in his interaction with authority figures. He was polite throughout his deposition. At one point he stated, "I used to have a problem with authority. I'm getting over that now."[6] Plaintiff stated that his present grades are good. Plaintiff stated that prior to the incident with Amerson he had been confronted with inappropriate language and that he responded in kind with a

---

[6] That, of course, was one of the purposes of the subject program at the jail.

female officer and perhaps others. He said that he got disrespectful and may have been trying to "pick a fight or something." He threatened to sue the officers he dealt with before he was turned over to Amerson.

Plaintiff testified that he was cuffed and shackled before Amerson came to the bench where he was sitting. He testified that Amerson said he was "here to help me and all this other stuff and I made the statement, I don't really care about this . . . . I remember saying that and all I remember after that was the moment where he had choked me." He did not remember being struck by Amerson.[7] The alleged "choking" incident was all that he could recall with reference to any physical conduct by Amerson. Plaintiff stated that Amerson's hand(s) were on his neck and throat, not his mouth, and that it "shortened" his breath after he applied a "*small* amount of pressure." (Emphasis added). He acknowledged that he challenged Amerson to fight. Plaintiff stated, "I did not try to spit." After the incident he was taken to a room where he cracked a window with a chair and did other damage because he allegedly had been told that inmates would come in the room.

Plaintiff's mother testified to the medicines he has been taking since before the incident and that "he's doing pretty good." Plaintiff's mother testified that prior to the incident a judge had "placed him on probation and put him in the "Success Academy." This resulted from a "squabble" with a teacher when plaintiff used vile language and a threat. She stated that at the time of the deposition (April 26, 2012) he was current with his grades and "on time."

His mother signed plaintiff into Amerson's program. She dropped him off at the jail. She testified that he did not have as much problem with people of authority as with what he perceived as untruthful people. She testified that his ADHD had something to do with it; that he gets

---

[7] Plaintiff repeatedly (many dozens of times) stated that he could not "remember" when asked questions.

frustrated and finds it hard to pull back on it. She stated that, "he had gotten suspended at the middle school a couple of times . . . . [for] fighting with another student, arguing, speaking out, talking at lunch." Asked, "How are his grades now," she stated, "they have improved greatly." She's had no out of pocket expenses on account of the incident. She does not know of any medical treatment he has received since the incident. He's refused to go to therapists.

Entries in various documents created by the Coosa Valley Youth Services and Juvenile Detention of Alabama reveal some consistencies with the depositions of plaintiff and his mother and some possible inconsistencies. One entry (6.), indicates some possibility of unmeasured pain in "shoulder-wrists from being arrested." There is no indication as to who may have caused any such pain. There is no suggestion that Amerson caused any such pain. The depositions suggest to the contrary. The document is apparently dated Feb. 7, 2011. Another document provides a list of possible "skin problems," (13.), with a listing of such problems including "abrasions, bruises." The section indicates no such problems, "abrasions, bruises" or otherwise. No. 16 pictures body sketches with no indication of bruises, abrasions or otherwise. It is dated Feb. 7, 2011.

Under a category of Initial Medical Assessment, No. 7, it is stated that there is no appearance of being tearful, fearful, sad, anxious, withdrawn, agitated or with anger regarding placement. The entry is apparently dated Feb. 18, 2011. No. 20 under this heading has the same listing as No. 13 stated above, again with a statement of none. No. 24 of this Feb. 18, 2011 document has the same body sketches referred to above as being under 16, but, unlike the number 16 sketches, has a statement of "1) abrasions" beneath the sketches.

Under a heading of "Juvenile Detention, State of Alabama," there are entries which state the plaintiff is not ill or suffering any pain but that he has recently been physically or sexually

12

abused. There is no suggestion of who committed any such abuse. The form is dated Feb. 4, 2011 and further states, "Claims he was beaten at the Sheriff's De [sic] arriving to CVYS." It does not state by whom. The depositions suggest to the contrary with regard to any "beating" by Amerson. The same form indicates that the plaintiff has no "serious injury" and does not appear to be in need of medical attention. The same form also indicates that there are *no* "altered mental status," "trauma," "markings/bruises," or "open sores/wounds."

A form dated Feb. 7, 2011, states, "Youth stated that he was beaten up by Sheriff *deputy* (not Amerson)." Plaintiff's unsworn handwritten "Statement of Allegation of Abuse" dated Feb. 7, 2011 mentions Amerson only as follows: "And then even later that day they call the Sheriff and told him that I was going to tell. So when the sheriff got there I was chained to a metal bench. So the Sheriff ask to 'speak to me in private' and they left and locked the door behind them. And [illegible] when the sheriffs started hitting me [contrary to the video and plaintiff's deposition] . . . ."

Attached hereto as Exhibit 1 is a photograph of what purports to be a slight bruise to plaintiff's neck.[8] Even a slight bruise cannot be truly perceived from an examination of the photograph. Plaintiff never sought nor received any medical examination or treatment for any purported physical or mental injury. There has been no expert testimony or other evidence of injury except that which might be gleaned from the depositions. Plaintiff testified that he could not "remember" any other physical injury other than the alleged "bruise." Plaintiff did not remember any doctor "checking out" any injury he may have had. He could not "remember any long-term effect" of any alleged injury.

---

[8] Apparently, the only still photograph of significance in evidence.

The case of *Nolin v. Isbell*, 207 F.3d 1253 (11th Cir. 2000) has a good discussion of the Eleventh Circuit law on the consideration of *de minimis* injury in the context of excessive force claims. Among the statements in that case are the following:

> ...Appellant contends the district court erred in denying his request for summary judgment based on qualified and discretionary immunity or the failure to establish a constitutional violation. *Id.* at 1254.

> . . . .

> The crux of the dispute centers around Appellant's use of force in arresting Appellee. Appellee claims Appellant grabbed him from behind by the shoulder and wrist, threw him against a van three or four feet away, kneed him in the back and pushed his head into the side of the van, searched his groin area in an uncomfortable manner, and handcuffed him. Appellee maintains he suffered bruising to his forehead, chest, and wrists, although he admits the bruises disappeared quickly and he did not seek medical treatment. *Id.* at 1255.

> . . . .

> ...At least three cases from this Court have used the principle of *de minimis* force since *Graham* in reversing a district court's denial of qualified immunity to police officers. *See Jones v. City of Dothen*, 121 F.3d 1456 (11 th Cir. 1997); *Gold v. City of Miami*, 121 F.3d 1442 (11 th Cir. 1997); *Post*, 7 F.3d at 1552. In the earliest of the post-*Graham* cases, *Post*, the officer, who sought to arrest the plaintiff for a building code violation, pushed the plaintiff against a wall and applied a choke-hold before placing the plaintiff in handcuffs–all despite the fact that the plaintiff did not resist. This Court concluded that (o)nce [the plaintiff] was handcuffed and taken outside, no further force was needed. But, even though pushing [the plaintiff] against the wall might have been unnecessary, this pushing was not plainly unlawful. When [the officer] acted, the case law on excessive force looked to, among other things, the need for force, the amount of force used, and the injury inflicted. That the amount of force [the officer] used, even if unnecessary, was enough to violate the law was not plain; reasonable doubt existed, and still exists, on whether this amount of unnecessary force was unlawful.

7 F.3d at 1559-60 (citations omitted).

> In *Gold*, the defendant officer arrested the plaintiff for disorderly conduct, which consisted mainly of disrespectful comments to the officer, and placed him in handcuffs. The plaintiff complained that the officer had applied the handcuffs too tightly and had refused to loosen them for more than twenty minutes.

14

In granting qualified immunity to the officer, this Court stated that

> the facts viewed in the light most favorable to [the plaintiff] show that [the plaintiff] experienced pain from the handcuffs for roughly twenty minutes and that [the plaintiff] suffered only skin abrasions for which he did not seek medical treatment. The minor nature of this injury reflects that minimal force was used to apply the handcuffs. Certainly, these circumstances would not "inevitably lead" a reasonable officer in the officers' positions to conclude that the force used to apply the handcuffs was unlawful.

121 F.3d at 1446-47.

Finally, in *Jones* the officer "slammed" the plaintiff against a wall, "kicked his legs apart, required him to raise his arms above his head, and pulled his wallet from his pants." 121 F.3d at 1460. This led the plaintiff to experience "pain from having to lift his arms since he had previously suffered a stroke," and "pain in his arthritic knee from having his legs picked apart." *Id.* In addition, the plaintiff later received minor medical treatment for the pain in his knee. Nevertheless, the *Jones* Court determined, relying on *Post*, that qualified immunity shielded the officers because while "the use of force against [the plaintiff] may have been unnecessary, the actual force used and the injury inflicted were both minor in nature. Given such variables, the application of the excessive force standard would not inevitably lead an official in [the defendant officers'] position to conclude that the force was unlawful." *Id.* At 1460-61.

From the foregoing cases, we conclude this Circuit has established the principle that the application of *de minimis* force, without more will not support a claim for excessive force in violation of the Fourth Amendment.

*Id.*at 1256-1257.

. . . .

As described above, Appellant, pursuant to what the district court found to be a lawful arrest, merely grabbed Appellee and shoved him a few feed against a vehicle, pushed Appellant's knee into Appellee's back and Appellee's head against the van, searched Appellee's groin area in an uncomfortable manner and place Appellee in handcuffs. Appellee had minor bruising which quickly disappeared without treatment. This factual recitation by Appellee fails well within the ambit of the de minimis force principle of *Post*, *Gold*, and *Jones*. In fact, the facts sound little different from the minimal amount of force and injury involved in a typical arrest.

15

*Id.* At 1259 FN4.a[9]

This court concludes that there was no Constitutional violation because there was no excessive force; there was only *de minimis* physical or mental injury, if any injury. Further, even it could be reasonably argued that there is a question of fact as to whether there was a Constitutional Fourth Amendment violation, the defendant Amerson is entitled to prevail on his qualified immunity defense. The plaintiff has not met the burden of defeating qualified immunity by showing that the law was clearly established that such force was excessive under the circumstances. Even if it could be established that Amerson acted with rudeness and anger, that would not, in and of itself, establish excessive force. It is apparent that Amerson started out to, as plaintiff testified, "to help me and all this other stuff." Plaintiff didn't "really care about this," and abruptly and defiantly turned away from Amerson.

The court will enter judgment in favor of defendant Amerson.[10]

This the 30th day of August, 2012.

*/s/ Robert B. Propst*

**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**

---

[9] *Also see Woodruff v. City of Trussville*, 2011 WL 2847585 No. 2 (11th Cir. 2011) and *Hassan v. Lubbock Independent School District*, 55 F.3d 1075, 1079-1082 (5th Cir. 2005).

[10] The parties have cited a number of district court cases which this court has not directly relied upon. These cases differ with regard to excessive force and are worthy of reading. There may still be a question as to whether the Fourth Amendment applies because the plaintiff is considered to having been "seized." If he was not seized, the Fourteenth Due Process Clause would apparently apply with, *maybe*, a different analysis. The court assumes that the Eleventh Circuit would consider that he was seized. *See Swint v. City of Wadley, Alabama*, 51 F.3d 988 (11th Cir. 1995).